## IN THE U.S. DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

CHERRY A. HAYWOOD

        Plaintiff

v.

COMTEC INFORMATION SYSTEMS

        Defendant

Case No. 1:25-cv-07883

Honorable Lindsay C. Jenkins

## DEFENDANT'S MOTION TO DISMISS PURSUANT TO THE
## DOCTRINE OF *FORUM NON CONVENIENS*

NOW COMES Defendant, COMTEC INFORMATION SYSTEMS, by and through its attorney, and respectfully moves this Court to dismiss the Complaint pursuant to the doctrine of *forum non conveniens*, on the ground that Plaintiff, CHERRY A. HAYWOOD, has filed suit in a venue that contradicts the parties' agreement with a mandatory forum selection clause. In support of this Motion, Defendant states as follows:

## INTRODUCTION

On July 11, 2025, Plaintiff, CHERRY A. HAYWOOD ("Haywood"), filed a Complaint against Defendant, COMTEC INFORMATION SYSTEMS ("ComTec"), in the U.S. District Court for the Northern District of Illinois. Haywood alleges that while employed by ComTec in Illinois, she was wrongfully discriminated and retaliated against due to her race, age, and sex. Count I seeks recovery under Title VII of the Civil Rights Act of 1964 for race-based discrimination and related retaliation. Count II seeks recovery under Title VII of the Civil Rights Act of 1964 for sex-based discrimination. Count III seeks recovery under the Age Discrimination in Employment Act for age-based discrimination. Count IV seeks recovery under the Illinois Human Rights Act for race, sex, and age-based discrimination and related retaliation. Prior to

answering the Complaint, at this early stage in the proceedings, Defendant now moves this Court dismiss the Complaint pursuant to the doctrine of *forum non conveniens* and the presence of a valid forum-selection clause. The clause, which Plaintiff voluntarily agreed to as part of her employment agreement, designates Dallas County, Texas, as the sole and exclusive jurisdiction for resolving "any disputes" between the parties. Under the Supreme Court's decision in *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49 (2013), such clauses are presumptively valid and enforceable, and the burden shifts to Plaintiff to demonstrate extraordinary circumstances that would justify disregarding the clause. Plaintiff cannot meet this burden, and dismissal is therefore warranted.

## STATEMENT OF FACTS

From October 19, 2022, to January 6, 2023, Plaintiff was employed by ComTec and worked remotely in DuPage County, Illinois. Plaintiff's Complaint, ECF Dkt. 1, ¶¶ 12, 26, attached hereto as Exhibit A. Plaintiff alleges that while employed by ComTec, she experienced race, age, and sex-based discrimination during her employment, and ultimately retaliation when she was terminated in January 2023. *Id*. at ¶ 1.

ComTec's principal place of business is located at 5525 N. MacArthur Blvd., Suite 650, Irving, TX 75038. *Id*. at ¶ 5. Plaintiff voluntarily signed her employment agreement with ComTec on September 23, 2022. The agreement includes the following provision:

> The laws of the State of Texas shall govern this letter/agreement. Both parties consent to the jurisdiction of Dallas County (Texas) and designate it as the sole and exclusive jurisdiction for the resolution of any disputes regarding this agreement or any other disputes which may arise between the parties. In the event ComTec incurs any attorney fees in conjunction with the enforcement of your obligations under the letter/agreement, then you agree to be liable for all such reasonable attorney fees, expenses and court costs.

Employment Agreement, p. 4, ¶ 19, attached hereto as Exhibit B.

Notwithstanding this provision, Plaintiff filed suit in the Northern District of Illinois, a

Page 2 of 11

forum that is expressly excluded by the terms of her employment agreement.

## ARGUMENT

Courts assessing forum selection clauses begin by determining whether the clause is valid, mandatory, and enforceable. The Supreme Court in *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49 (2013), clarified that when a valid and mandatory forum selection clause designates a state or foreign court, a federal court must dismiss the case under *forum non conveniens*. *Id*. at 50. The Court emphasized that "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way they evaluate a forum-selection clause pointing to a federal forum." *Id*. at 61. Forum selection clauses are presumptively valid and enforceable, and the burden shifts to the party resisting enforcement to demonstrate that enforcement would be unreasonable, unjust, or contrary to public interest. *Id*. at 63-64. A clause is valid if it was reasonably communicated to the resisting party, was not the product of fraud, coercion, or overreaching, and does not contravene a strong public policy of the forum. See *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) ("Like any contract provision, a forum-selection clause will be enforced unless enforcement would be unreasonable or unjust or the provision was procured by fraud or overreaching.")(citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972)).

A clause is considered mandatory, rather than permissive, when its language clearly designates a particular forum as the exclusive venue for resolving disputes. See *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884 (7th Cir. 2004) (upholding dismissal for improper venue based on forum selection clause that "exclusively" set Bermuda as proper venue). Further, courts look for terms that expressly cover "all claims between the contracting parties that 'arise out of' or 'relate to' a contract." *Dahmani v. SHL Med. AG*, 2024 WL 3011330 (N.D. Ill.

2024) (quoting *ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, No. CIV.A. 6562-VCP, 2011 Del. Ch. LEXIS 129, 2011 WL 4552508, at *5 (Del. Ch. Sept. 14, 2011). Under *Atlantic Marine*, the private interests of the parties and witness are largely irrelevant, and the clause must be enforced absent extraordinary circumstances. *Atl. Marine*, 571 U.S. 49 at 64. Accordingly, unless the party opposing enforcement can meet the heavy burden of showing that public interest factors overwhelmingly favor the plaintiff's chosen forum, a federal court must dismiss an action filed in a proper venue when the parties have contractually agreed to resolve disputes exclusively in a nonfederal forum. *Id.* at 64.

## I.     The Forum Selection Clause is Mandatory, Broad, and Enforceable

The language of the forum selection clause satisfies all the requirements for enforceability under *Atlantic Marine* and related precedent. On September 23, 2022, Haywood voluntarily signed her employment agreement with ComTec. Specifically, the agreement states that "**both parties consent**" to the jurisdiction of Dallas County, Texas for the resolution of disputes. Ex. B., p. 4, ¶19 (emphasis added). The clause goes further, designating Dallas County, Texas, as "**the sole and exclusive jurisdiction**" for the resolution of disputes. *Id.* (emphasis added). Courts uniformly interpret such language as "sole and exclusive jurisdiction" as mandatory, rather than permissive, requiring disputes to be resolved in the designated forum. This interpretation ensures that parties are held to their contractual agreements and prevents forum shopping, which undermines the predictability and efficiency of dispute resolution. See *Am. Patriot Ins. Agency v. Mut. Risk Mgmt.*, 364 F.3d 884 (7th Cir. 2004).

The clause also applies broadly to Plaintiff's claims. It governs not only "disputes regarding this agreement," but also to "**any other disputes which may arise between the parties.**" Ex. B., p. 4, ¶ 19 (emphasis added). Courts have consistently held that forum selection

clauses with catch-all language, such as "any disputes which may arise between the parties," are broad enough to encompass both contractual and statutory claims. See *Dahmani*, 2024 WL 3011330 (interpreting broad clauses to cover "all claims between the contracting parties that arise out of or relate to a contract"); see also *Hugel v. Corporation of Lloyds*, 999 F.2d 206, 209 (7th Cir. 1993) (holding that all of the plaintiffs' claims arise from the contractual relationship and are therefore within the scope of the forum selection clause). Similarly, in *Archer Daniels Midland, Inc. v. LNG Indy LLC*, 2021 WL 1634411 (N.D. Ind. 2021), the court held that broad forum selection clauses apply to both contract and tort claims, further demonstrating the enforceability of such provisions.

Courts have consistently upheld forum selection clauses for statutory claims, including employment discrimination claims under federal and state law, as long as the claims arise from the employment relationship and are not uniquely bound to a particular forum's public policy. Enforcing the clause does not deprive Plaintiff of a remedy; it simply requires her to pursue her claims in the agreed-upon forum. See *Iac/Interactivecorp v. Roston*, 44 F.4th 635 (7th Cir. 2022) (holding that a forum selection clause applying to disputes "arising out of or related to this Agreement" was broad enough to encompass claims beyond breach of contract, including wrongful termination and disputes over stock awards). Similarly, in *Sharpe v. Jefferson Distrib. Co.*, 148 F.3d 676 (7th Cir. 1998), the Seventh Circuit affirmed dismissal of Title VII claims based on a forum selection clause in the plaintiff's employment agreement. Here, Plaintiff's claims, which arise from her former employment with Defendant, fall squarely within the clause's scope.

Additionally, the forum selection clause designates "Dallas County (Texas)," as the sole and exclusive jurisdiction for resolving disputes. The absence of any reference to the "Northern District of Texas" or federal jurisdiction confirms that the parties intended to litigate in state court.

Because the forum selection clause designates a state court rather than a federal court, transfer under 28 U.S.C § 1404(a) is unavailable. Instead, dismissal under the doctrine of *forum non conveniens* is the proper procedural mechanism for enforcing the clause. This distinction is critical, as *Atlantic Marine* explicitly holds that forum selection clauses pointing to nonfederal forums must be enforced through dismissal rather than transfer. See *Atl. Marine*, 571 U.S. 49 at 60-61.

Plaintiff may argue that the forum selection clause was imposed unfairly or without meaningful consent. However, Plaintiff, a highly educated and experienced professional in a leadership position, voluntarily signed the employment agreement containing the forum selection clause. Given her background and level of responsibility associated with her role, Plaintiff had both the capacity and opportunity to understand the terms of the agreement she signed, including the forum selection clause. Courts routinely enforce such clauses in employment contracts unless the plaintiff can demonstrate that the clause was the product of fraud, coercion, or significant overreaching, which Plaintiff cannot credibly claim here. See *Paper Express*, 972 F.2d 753 at 757.

*Atlantic Marine* also makes clear that inconvenience to the Plaintiff is not a sufficient basis to override a valid forum selection clause. *Atl. Marine*, 571 U.S. 49 at 64. When parties agree in advance to a particular forum, they effectively waive their right to argue that it is inconvenient later. *Id.* The clause's enforcement merely holds Plaintiff to the terms of the agreement she accepted.

Moreover, Plaintiff's own complaint acknowledges that she worked remotely, and that Defendant's principal place of business is in Texas. Ex. A. ¶¶ 5, 12. These facts further undermine any claim of unfairness or surprise. By accepting a remote position with a Texas-based company and agreeing to have disputes governed by Texas law, Plaintiff reasonably should have anticipated that any litigation would take place in Texas. This connection to Texas further supports the

reasonableness of enforcing the forum selection clause. Any alleged inconvenience is outweighed by her voluntary participation in a remote employment relationship anchored in Texas and governed by Texas law. See *Dace Int'l v. Apple Computer*, 275 Ill. App. 3d 234 (1st Dist. 1994) (forum selection clause enforced because inconvenience of a California forum was not a sufficient basis upon which to invalidate the parties' agreement); *Karlberg European Tanspa, Inc. v. JK-Joseph Kratz Vertriebsgesellschaft mbH*, 618 F. Supp. 344 (N.D. 1985) (defendant manufacturer's motion to dismiss granted because forum selection clause was unambiguous and therefore upheld); *In re Ryze Claims Sols., LLC*, 968 F.3d 701 (7th Cir. 2020) (forum selection clause in employment agreement was entitled to controlling weight in determining venue of the lawsuit, particularly as there were no exceptional circumstances).

The language of this clause demonstrates that it is mandatory, broad, and enforceable. Courts have consistently held that valid forum selection clauses outweigh all other considerations regarding convenience or private interests. Under *Atlantic Marine*, this clause should be given full effect, and the Plaintiff's claims should be dismissed. *Atl. Marine*, 571 U.S. 49 at 63-64. Enforcing the clause merely holds Plaintiff to the terms of the agreement she voluntarily signed, ensuring predictability and efficiency in dispute resolution.

## II.     Plaintiff's Claims Under the Illinois Human Rights Act Do Not Preclude Enforcement and Should be Dismissed for Failure to Exhaust Administrative Remedies

The inclusion of claims under the Illinois Human Rights Act ("IHRA") does not preclude enforcement of the forum selection clause. Courts have consistently upheld forum selection clauses for statutory claims, including employment discrimination claims under laws like the IHRA, as long as the claims arise from the employment relationship and are not uniquely bound to a particular forum's public policy. The IHRA claims here are substantively similar to Plaintiff's

federal claims under Title VII and the Age Discrimination in Employment Act ("ADEA"), as they arise from the same alleged conduct and involve analogous legal standards. As noted above, the forum selection clause does not deprive Plaintiff of a remedy; it simply requires her to pursue her claims in the agreed-upon forum, which is fully competent to adjudicate both federal and state statutory claims. See *Atl. Marine*, 571 U.S. 49 at 64. See also *In re Ryze Claims Sols., LLC*, 968 F.3d 701 (7th Cir. 2020) (upholding transfer to Southern District of Indiana pursuant to valid forum selection clause despite plaintiff's California-based labor law claims); *Calanca v. D & S Mfg. Co.*, 157 Ill. App 3d 85 (1st Dist. 1987) (upholding dismissal based on *forum non conveniens* due to valid forum selection clause where plaintiff brought Illinois wage claim).

Moreover, Plaintiff's IHRA claims are procedurally barred because she failed to exhaust the administrative remedies required under Illinois law. The IHRA mandates that a complainant file a charge of discrimination with the Illinois Department of Human Rights ("IDHR") or have her charge cross-filed through the Equal Employment Opportunity Commission ("EEOC"). Once the EEOC issues a determination or a Right to Sue Notice, a complainant must notify the IDHR of the EEOC's determination and allow the IDHR to either adopt the EEOC's findings or conduct its own review. *See* 775 ILCS 5/7A-102(A-1)(3). If the complainant fails to notify the IDHR of the EEOC's determination, the IDHR cannot complete its statutory role, and the complainant is barred from pursuing IHRA claims in court.

Here, Plaintiff's Complaint only refers to a Charge of Discrimination filed with the EEOC and an issuance of a Right to Sue Letter from the EEOC. Ex. A. at ¶¶ 8-9. Based on this, Plaintiff failed to notify the IDHR of the EEOC's determination or Right to Sue Notice, as required by 775 ILCS 5/7A-102(A-1)(3). This failure deprived the IDHR of the opportunity to adopt the EEOC's findings, conduct its own review, or issue its own determination. Without this critical step, Plaintiff

has not satisfied the prerequisites for bringing IHRA claims. The IHRA's administrative process is not a mere formality; it is a jurisdictional requirement designed to ensure that the IDHR can investigate and resolve claims before litigation. This failure deprived the IDHR of its statutory role and bars Plaintiff from pursuing IHRA claims in any court. See *Renfro v. Rotary Int'l*, 2023 U.S. Dist. LEXIS 149088, at *8, 2023 WL 5487061 (N.D. Ill. 2023) ("For a court to adjudicate an IHRA claim, a plaintiff must exhaust administrative remedies, [which requires that] a final administrative order must have been rendered by the Illinois Department of Human Rights.") (Internal citations omitted). Additionally, the EEOC Right to Sue Notice does not serve as a substitute for a final order from the state agency. See, e.g., *Ellman v. Woodstock # 200 Sch. Dist.*, 2001 U.S. Dist. LEXIS 2519, at *22, 2001 WL 218958 (N.D. Ill. 2001) (IDHR workshare agreement with the EEOC does not alter the Commission's exclusive jurisdiction over the IHRA).

While exhaustion of administrative remedies is generally an affirmative defense that is not resolved at the pleading stage, an exception applies where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense. Here, Plaintiff's Complaint explicitly references a Charge of Discrimination filed with the EEOC and an issuance of a Right to Sue Letter from the EEOC but fails to include any reference to the IDHR or its required administrative process. This omission is plain on the face of the Complaint and renders Plaintiff's IHRA claims procedurally barred. See *Hickman v. Bd. of Educ.*, 2023 U.S. Dist. LEXIS 230823, at *5, 2023 WL 9050972 (N.D. Ill. 2023) ("A district court may dismiss a complaint if the existence of a valid affirmative defense such as the failure to exhaust, is so plain on the face of the complaint that the suit can be regarded as frivolous.") (citing *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010).

Accordingly, Plaintiff's IHRA claims should be dismissed in their entirety for failure to

exhaust administrative remedies, regardless of the Court's decision on the forum selection clause. The procedural bar is clear from the face of the Complaint, and the forum selection clause further requires that Plaintiff pursue her claims in the agreed-upon forum, Dallas County, Texas.

### III. Procedural Timing

Defendant has filed this motion at the earliest stage of the proceedings, prior to answering the Complaint, to preserve the issue and avoid any risk of waiver. Courts have consistently held that enforcement of a forum selection clause is not jurisdictional but rather a waivable defense. See *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740 (7th Cir. 2007). Accordingly, forum selection clauses must be raised early in the proceedings, as failure to do so constitutes waiver. See *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510 (7th Cir. 2001) (denying appellees' motion to dismiss on grounds of *forum non conveniens* because appellees waived their objection to venue by agreeing to a forum selection clause, emphasizing their failure to argue the enforceability of the clause at the appropriate time).

Defendant's prompt filing of this motion ensures that the issue is properly preserved and allows the Court to address the enforceability of the forum selection clause before proceeding further in the case.

WHEREFORE, Defendant, COMTEC INFORMATION SYSTEMS, respectfully moves this Court to dismiss the Complaint pursuant to the doctrine of *forum non conveniens*, as Plaintiff filed suit in a venue that violates the mandatory and enforceable forum selection clause contained in her employment agreement. The forum selection clause requires that all disputes between the parties be litigated exclusively in Dallas County, Texas. For these reasons, Defendant respectfully requests that this Court dismiss the Complaint in its entirety.

Respectfully submitted,
**SCHUELER, DALLAVO & CASIERI**


By: /s/ *Katherine A. Rodosky*
_____
An Attorney for Defendant

Katherine A. Rodosky
Schueler, Dallavo & Casieri
525 W. Monroe Street, Suite 1530
Chicago, IL 60661
(312) 831-1091
krodosky@sdc-atty.com
ARDC No. 6225948

### CERTIFICATE OF SERVICE

Katherine A. Rodosky, an attorney in this matter, certifies that the foregoing Motion to Dismiss Under Forum Non Conveniens was served upon all counsel of record by the court's Electronic Case Filing (ECF) system on this August 11, 2025.


/s/ *Katherine A. Rodosky*
_____

# **Exhibit A**

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| CHERRY A. HAYWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. |
| | ) |
| COMTEC INFORMATION SYSTEMS, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, CHERRY A. HAYWOOD, by and through her attorney Nicholas F. Esposito, and for her complaint against Defendant COMTEC INFORMATION SYSTEMS alleges the following:

### Jurisdiction, Venue, and Parties

1.      Plaintiff alleges race, age, sex discrimination and prohibited related retaliation.

2.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 2000e, *et seq.*), Age Discrimination in Employment Act of 1967 as amended (29 U.S.C. § 621, *et seq.*), and the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.

3.      This action is brought under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and §1343(4) because this action arises from an Act of Congress for the protection of civil rights. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law, which rights provide for damages, injunctive and other relief for illegal discrimination in employment.

4.      At all times relevant hereto, Plaintiff is an adult female individual, over the age of 40 years, and citizen of the State of Illinois, and who currently resides within this judicial district.

1

Exhibit A

5. At all times relevant hereto, Defendant Chamber of Commerce.com has its principal place of business at 5525 N. MacArthur Blvd., Suite 650, Irving, TX 75038 with employees residing in Illinois and which does business in this judicial district.

6. Venue in this district is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) and (c) because the unlawful employment practices occurred in this district and the Defendant does business in this judicial district.

7. Defendant advertises itself as a technology consulting company to businesses, customer-centric to design and develop tailor-made solutions.

8. On October 10, 2023, Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission regarding alleged race, sex, age and retaliation discrimination pursuant to Title VII and the discrimination Age Discrimination in Employment Act of 1967, the Civil Rights Act of 1991, and the Illinois Human Rights Act.

9. On April 14, 2025, the EEOC issued its Right to Sue Letter. This suit is filed timely filed within ninety (90) days of receipt of the Right to Sue Letter.

10. At all times relevant hereto, Plaintiff was and is a resident of the City of Aurora, DuPage County, Illinois.

11. Plaintiff is a 59-year-old, Black, female.

12. Plaintiff was hired by Defendant Comtec Information Systems as a fulltime employee for the role of "Sr. SAP Project Manager" (with salary and benefits) on September 30, 2022, working remotely in DuPage County, Illinois.

13. On January 5, 2023, Plaintiff was contacted her new supervisor, Project Manager Teresa Derting (white, female), working remotely, on information and belief from Florida, in

2

Exhibit A

DuPage County, Illinois, and who expressed concern about Plaintiff not providing her project information promptly enough.

14.     However, in its EEOC Position Statement, Defendant states, "By the time Derting stepping [sic] into the Program, Complainant's projects were already behind schedule. In the two weeks that Complainant reported to Derting, two milestones had to be pushed back. This, is in and of itself, is not necessarily an issue," nor was its Plaintiff's doing.

15.     In a follow-up conversation with Ms. Derting on the evening of January 5, 2023, Plaintiff informed her that the task had been completed. Ms. Derting aggressively responded that she was "really pissed off that Plaintiff had not gotten her the information quickly enough."

16.     Plaintiff informed Ms. Derting that she was very engaged with getting clients' answers about vendor questions by the end of day.

17.     Ms. Derting loudly responded that Plaintiff's problem was that Plaintiff was not in charge. She added, "I know what your problem is Cherry." Plaintiff responded, "I am sorry?" Ms. Derting answered, "Your problem is that you are not in charge. You are not in charge...you see black...I mean...just your people don't always get to be in charge." In shock, Plaintiff asked, "please help me understand what do you mean, 'Black people don't always get to be in charge?' What are you talking about? I simply called you to let you know that I had completed a task and to provide the remaining status." Ms. Derting responded again, "Cherry, you need to understand Blacks are not always in."

18.     On the morning of January 6, 2023, Plaintiff called the then Vice President - Customer Services Vijay Saradhi and informed him of the entire incident. Vice President Saradhi told Plaintiff that he would immediately follow up and be back in touch with Plaintiff.

3

Exhibit A

19.    Plaintiff attended her weekly SAP/software status meeting with the client Sr. Leadership. Ms. Derting attended *for the first time*. The client asked Plaintiff to provide an update.

20.    Plaintiff finished the January 6, 2023 meeting, and continued the morning with planning client meetings. In the middle of Plaintiff' working session, her computer screen locked up. Plaintiff logged out and attempted to log back in, but Plaintiff could not.

21.    Plaintiff called the IT helpdesk. The IT helpdesk told Plaintiff that a request was put in to immediately disconnect her access. The IT helpdesk had no further information.

22.    Plaintiff immediately called Vice President Saradhi to inform him what had occurred. He responded, "This can't be happening," and that he would look into it and find the underlying cause of it.

23.    Vice President Saradhi said he was supposed to have a call with Ms. Derting on Tuesday, January 10, 2023, and he would follow up with Plaintiff immediately after that call.

24.    Vice President Saradhi did not contact Plaintiff.

25.    Plaintiff kept calling him on January 10, 11, 12, 13, 16, 17, 18, 19, 2023.

26.    On Jan 20, 2023.  Plaintiff left Vice President Saradhi another message to call her. He did not return her call. Instead, she received a final paycheck on January 20, 2023.

27.    Thereafter, on information and belief, Plaintiff is informed and believes that her job and/or duties including clients was turned over to a younger, less, experienced white, female, and Asian male(s).

**Count I**
**Race Discrimination and Retaliation**

1-27. Plaintiff repeats and realleges paragraphs 1 through 27 as paragraphs 1 through 27 herein.

28.    The Defendant subjected plaintiff to race discrimination.

4

Exhibit A

29.     The Defendant subjected plaintiff to race discrimination, racial harassment, and a racially hostile work environment.

30.     Plaintiff complained about racial misconduct to her superior, who ignored her complaints and, despite his promise to do so, provide Plaintiff with no investigation and/or response and/or remedy to her complaint. Instead, Defendant retaliated against her by firing her and on information and belief replacing her with or transferring some of her duties to a younger white female, and at least one younger Asian male.

31.     The Defendant engaged in unlawful race discrimination and harassment by subjecting her to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, which created an intimidating, oppressive, hostile and offensive work environment that interfered with Plaintiffs' emotional well-being, and engaged in retaliation for Plaintiff's complaint of wrongful conduct.

29.     The Defendant failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate racial harassment and discrimination in the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

30.     As a direct and proximate result of Defendant's discrimination against Plaintiff, she has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

31.     The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

Exhibit A

32. Plaintiff seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**WHEREFORE,** Plaintiff prays for judgment in her favor and against The Acosta Defendants and asks that the court award her direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

<div align="center">

**Count II**
**Sex Discrimination**

</div>

1-32. Plaintiff repeats and realleges paragraphs 1 through 32 as paragraphs 1 through 32 herein.

33. The Defendant subjected plaintiff to sex discrimination, and related retaliation.

34. The Defendant subjected plaintiff to sex discrimination.

35. Plaintiff complained about misconduct to her superior, who ignored her complaints and, despite his promise to do so, provide Plaintiff with no investigation and/or response and/or remedy to her complaint. Instead, Defendant retaliated against her by firing her and on information and belief replacing her with or transferring some of her duties to a younger white female, and at least one younger Asian male.

36. The Defendant engaged in unlawful race discrimination and harassment by subjecting her to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, which created an intimidating, oppressive, hostile and offensive work environment that interfered with Plaintiffs' emotional well-being, and engaged in retaliation for Plaintiff's complaint of wrongful conduct.

37. The Defendant failed to comply with their statutory duty to take all reasonable and

<div align="center">

6

</div>

**Exhibit A**

necessary steps to eliminate racial harassment and discrimination in the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

38.     As a direct and proximate result of Defendant's discrimination against Plaintiff, she has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

39.     The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

40.     Plaintiff seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**WHEREFORE,** Plaintiff prays for judgment in her favor and against The Acosta Defendants and asks that the court award her direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**Count III**
**Age Discrimination**

1-40. Plaintiff repeats and realleges paragraphs 1 through 40 as paragraphs 1 through 40 herein.

41.     The Defendant subjected plaintiff to race discrimination.

42.     The Defendant subjected plaintiff to race discrimination, racial harassment, and a racially hostile work environment.

Exhibit A

43.     Plaintiff complained about racial misconduct to her superior, who ignored her complaints and, despite his promise to do so, provide Plaintiff with no investigation and/or response and/or remedy to her complaint. Instead, Defendant retaliated against her by firing her and on information and belief replacing her with or transferring some of her duties to a younger white female, and at least one younger Asian male.

44.     The Defendant engaged in unlawful age discrimination in violation of the Age Discrimination in Employment Act, which created an intimidating, oppressive, hostile, and offensive work environment that interfered with Plaintiffs' emotional well-being, and engaged in retaliation for Plaintiff's complaint of wrongful conduct.

45.     The Defendant failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate racial harassment and discrimination in the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

46.     As a direct and proximate result of Defendant's discrimination against Plaintiff, she has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

47.     The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

48.     Plaintiff seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**Exhibit A**

**WHEREFORE,** Plaintiff prays for judgment in her favor and against The Acosta Defendants and asks that the court award her direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

### Count IV
### Race, Sex and Age Discrimination, Harassment, and Retaliation
### Illinois Human Rights Act, 775 ILCS 5/1-101 et seq

1-48. Plaintiff repeats and realleges paragraphs 1 through 48 as paragraphs 1 through 48 herein.

49.     The Defendant subjected plaintiff to race, and then sex and age discrimination, and a racially hostile work environment.

50.     Plaintiff complained about the misconduct to her superior, who ignored her complaints and, despite his promise to do so, provide Plaintiff with no investigation and/or response and/or remedy to her complaint. Instead, Defendant retaliated against her by firing her.

51.     The Defendant engaged in unlawful discrimination and harassment by subjecting her to a hostile work environment, in violation of Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.

52.     The Defendant failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate racial harassment and discrimination in the workplace and to prevent it from occurring in the future. Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.

53.     As a direct and proximate result of Defendant's discrimination against Plaintiff, she has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional

Exhibit A

distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

54.     Plaintiff seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**WHEREFORE,** Plaintiff prays for judgment in her favor and against The Acosta Defendants and asks that the court award her direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to Illinois Human Rights Act, 775 ILCS 5/1-101 et seq., reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**JURY TRIAL IS DEMANDED FOR ALL COUNTS.**

<div style="margin-left:40%">

Respectfully submitted,
Cherry Haywood,
Plaintiff
/s/ Nicholas F. Esposito
Plaintiff's Attorney

</div>

Nicholas F. Esposito
Esposito Law LLC
835 McClintock Dr., Suite 100
Burr Ridge, IL 60527
(312) 346-2766
ARDC No.: 0755176

Exhibit A

# **Exhibit B**



September 23, 2022

Re: Offer of Employment

**Ms. Cherry Ann Haywood**
3433 Bradbury Circle
Aura, Illinois 60504
630-697-1147
cherryhaywood1913@gmail.com

Dear **Ms. Cherry Ann Haywood**,

ComTec is pleased that you have agreed to accept our offer of employment. As discussed, you will assume the position of a **Senior Project Manager**.

Following are the terms and conditions of your employment with ComTec. If you agree with them, please sign on the last page of this letter of acceptance and return this letter to our office. We are confident your employment with ComTec will prove mutually beneficial, and we look forward to having you join our team.

• TERM: Your employment at ComTec is at-will employment, which means that you are free to resign at will at any time, and ComTec may terminate the employment relationship at will at any time, with or without notice or cause, so long as there is no violation of applicable federal, state, or local laws. Should you choose to resign from your employment with ComTec, you are requested to provide two weeks advance notice. In the event you provide the requested notice, ComTec will pay you the balance of any accrued but unused paid time off. Should you fail to provide the requested notice, you will be ineligible for rehire, and you will not be compensated for any accrued but unused paid time off. Nothing in this Agreement shall guarantee any specific period of employment.

• WORK AUTHORIZATION: Our offer to hire you is contingent upon your submission of satisfactory proof of your identity and obtaining legal authorization to work in the United States and successful completion of your background check and drug test. Please initial here that we have your consent and permission to release the results of your background check and drug test to our client. CA

• RESPONSIBILITIES: You will be performing at a professional level of competence the services, duties, and obligations expected of a **Senior Project Manager**. In this position, you will also be responsible for performing any other duties which may be requested of you by ComTec.

**Exhibit B**



- COMPENSATION:  You will be compensated with an annual salary of **$220,000**.  All hours must be approved by ComTec or ComTec's client manager. Applicable Federal, State, City, and other taxes will be deducted from your gross earnings. Failure to submit timesheets on time may result in a delay of your pay up to 30 days.

- EXPENSES:  You will be responsible for all of your own necessary expenses incurred by you to travel from your current location or to relocate from your current location.  ComTec will not reimburse you for any of your travel or relocation expenses.



- AUDIT CONTROLS:  From time to time, a vendor, client, or third party, may conduct a routine payroll audit, and ComTec may be contractually obligated to release your compensation information.  As a condition of your employment with us, please initial here that if we are compelled by such a duty, ComTec has your consent and permission to release your pay details.

- CONFIDENTIALITY: You will hold in trust and not disclose to any party, directly or indirectly, during your employment with ComTec, and until the completion of two years from the termination date, any confidential information relating to research, development, trade secrets, customer prospect lists, or business affairs of ComTec or its clients.

- NON-COMPETITION: Due to significance of the work provided by you, and in consideration of the benefits received by ComTec, the sufficiency of which is hereby acknowledged, you agree that for a period of two years, you shall not directly or indirectly engage in a similar role with any of ComTec's clients where you have already performed services on behalf of ComTec. Also, you shall not accept any kind of employment offer from any of ComTec's clients without prior consent from ComTec where you have already performed services on behalf of ComTec.

- PAY INTERVAL: ComTec issues biweekly paychecks to employees (every other Friday) with a 14-day lag. Unless otherwise requested, your pay will be directly deposited into the bank account that you provide.

- PAID TIME OFF:  You will receive 2 weeks of paid time off every twelve months. Your paid time off will accrue at the rate of 3.08 hours for every two weeks of service. If you terminate your employment without providing at least 2 weeks notice to

**Exhibit B**

DocuSign Envelope ID: CE62D468-DF58-4DAC-85AD-400AC40A6CD7



ComTec, all accrued but unused paid time off will be forfeited. If you work any client approved overtime hours, those hours will be added to your paid time off.

• HOLIDAY PAY: You will be eligible to receive 9 paid holidays per year as set forth and established by ComTec's policies, which are subject to change from time to time at the sole discretion of ComTec.

• HEALTH INSURANCE: As an employee of ComTec, you will be eligible to receive health insurance benefits from the date of hire as set forth and established by the plan's guidelines.

• 401(k) BENEFITS: As an employee of ComTec, you will be eligible to participate in ComTec's 401(k) plan as set forth and established by the plan's guidelines.

• RETURN OF RECORDS AND PROPERTY: Upon termination of your employment, you must immediately return your security badge and deliver all records, notes, data, memoranda, models, and equipment of any nature that are in your possession or under your control to ComTec. Any property, which belongs to either ComTec or the client for whom you are working or which in any way, relates to ComTec's business, must be immediately returned.

• SALARY/PERFORMANCE REVIEW: You will have an annual performance / salary reviews. In the event that you have questions or concerns concerning your employment with ComTec, those questions or concerns should be directed to the ComTec human resources department.

• DUTY OF LOYALTY/OTHER EMPLOYMENT: Because ComTec's sole business is to match the experience and skills of its prospects/employees with the needs of its customers and place such prospects/employees with its customers accordingly, ComTec expects that you will be available and ready to work during regular business hours, generally 8:30 a.m. to 5:30 p.m., or as the needs of the customer requires. ComTec strictly prohibits its employees from performing consulting work or work for another business or employer if such work in any way interferes with the employee's work for ComTec and/or ComTec's customers. This provision does not apply to employee's personal pursuits or interests, consulting work, or work for another business so long as such pursuits/work are undertaken outside of general business hours. By signing this Offer Letter, you authorize ComTec to contact your most recent employer (after you have resigned and/or given your notice) to confirm dates of employment. Any exception to this provision must be properly disclosed in advance and approved in writing by ComTec.

**Exhibit B**



The laws of the State of Texas shall govern this letter/agreement.  Both parties consent to the jurisdiction of Dallas County (Texas) and designate it as the sole and exclusive jurisdiction for the resolution of any disputes regarding this agreement or any other disputes which may arise between the parties. In the event ComTec incurs any attorney fees in conjunction with the enforcement of your obligations under this letter/agreement, then you agree to be liable for all such reasonable attorney fees, expenses and court costs.

This letter contains the entire agreement of the parties (except for the provisions of any additional confidentiality or non-competition agreements executed simultaneously or subsequent to this agreement) and both parties agree that there are no other promises or conditions in any other agreement, whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties. This Agreement may be modified or amended only if the amendment is made in writing and is signed by both parties.

You understand that this letter constitutes a binding contract and you understand that you have the right to seek an attorney to review the terms of this agreement prior to signing it.

We believe that ComTec will offer you a challenging and rewarding environment, where you will have the opportunity to achieve substantial professional development. ComTec also believes that your experience and capabilities will contribute to the company's continuing growth.

Very truly yours,

I have read this letter
and I accept the terms
set forth in it:

*Ellen Raye Chiasson*
14270DB0C99D4CA...

Ellen Raye Chiasson
HR Director
ComTec Consultants, Inc.
d/b/a ComTec Information Systems

*Cherry Haywood*
5395C035D7E44CA...

**Cherry Ann Haywood**

**Exhibit B**